UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ASHLYNN ALEXANDER,                          :   Case No. 17 Civ. 5532
                                            :
                        Plaintiff,          :   **COMPLAINT**
                                            :
            - against -                     :
                                            :
POSSIBLE PRODUCTIONS INC., SHOWTIME         :
PICTURES DEVELOPMENT COMPANY, and TRAVIS    :
REHWALDT                                    :
                                            :
                        Defendants.         :
------------------------------------------------------------------X

Plaintiff Ashlynn Alexander, by and through her attorneys, Shulman Kessler LLP, complaining of Defendants Possible Productions Inc., Showtime Pictures Development Corp., and Travis Rehwaldt, alleges as follows:

## INTRODUCTION

1. Ms. Alexander worked for Possible Productions from October 2013 until September 2015.

2. On September 17, 2015, Ms. Alexander's supervisor Defendant Travis Rehwaldt sexually harassed Ms. Alexander. The next day Ms. Alexander approached Defendant Travis Rehwaldt and complained about his harassing conduct. Six days later, on September 24, 2015, Defendants retaliated by terminating Ms. Alexander.

## NATURE OF THE CLAIMS

3. The unlawful retaliation described herein was committed in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

4. The unlawful discrimination described herein was committed in violation of the NYCHRL.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a of a Notice of Right to Sue on April 28, 2017.

6. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the NYCHRL.

7. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION & VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and City law pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper within this Judicial District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred in the Southern District of New York.

## THE PARTIES

**Plaintiff**

10. Plaintiff Ashlynn Alexander is a resident of the County of New York, State of New York.

11. At all times relevant, Plaintiff was an "employee" within the meaning of all applicable statutes.

**Defendants**

*Defendant Possible Productions Inc.*

12.     Upon information and belief, during all times hereinafter mentioned, Possible Productions Inc. is an "employer" within the meaning of all applicable statutes.

13.     Upon information and belief, during all times hereinafter mentioned, Possible Productions Inc. maintained a place of business within the City of New York, at 51 West 52nd Street, New York, New York, 10019.

14.     Upon information and belief, during all times hereinafter mentioned, Possible Productions Inc. is a corporation organized and existing pursuant to the laws of the State of New York, doing business in the State and City of New York.

*Defendant Showtime Pictures Development Company*

15.     Upon information and belief, during all times hereinafter mentioned, Showtime Pictures Development Company is an "employer" within the meaning of all applicable statutes.

16.     Upon information and belief, during all times hereinafter mentioned, Showtime Pictures Development Company maintained a place of business within the City of New York, at 51 West 52nd Street, New York, New York, 10019.

17.     Upon information and belief, during all times hereinafter mentioned, Showtime Pictures Development Company is a corporation organized and existing pursuant to the laws of the State of Delaware, doing business in the State and City of New York.

*Defendant Travis Rehwaldt*

18.     Upon information and belief, and at all times hereinafter mentioned, Rehwaldt is an agent of Possible Productions Inc.

19. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the authority over personnel decisions for Possible Productions Inc.

20. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the authority over payroll decisions for Possible Productions Inc.

21. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt supervises employees of the Possible Productions Inc.

22. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the authority to hire and fire employees for Possible Productions Inc.

23. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the power to make binding decisions for Possible Productions Inc.

24. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt is an employee of Possible Productions Inc.

25. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt is an agent of Showtime Pictures Development Company.

26. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the authority over personnel decisions for Showtime Pictures Development Company.

27. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the authority over payroll decisions for Showtime Pictures Development Company.

28. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt supervises employees of the Showtime Pictures Development Company.

29. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the authority to hire and fire employees for Showtime Pictures Development Company.

30. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt has the power to make binding decisions for Showtime Pictures Development Company.

31. Upon information and belief, and at all times hereinafter mentioned, Rehwaldt is an employee of Showtime Pictures Development Company.

32. At all times hereinafter mentioned, Rehwaldt was and still is an "employer" within the meaning of the NYSHRL.

33. At all times hereinafter mentioned, Rehwaldt was and still is a "person" within the meaning of the NYSHRL.

34. Upon information and belief, during all times hereinafter mentioned, Travis Rehwaldt is an employee of Possible Productions Inc. and Showtime Pictures Development Company within the meaning of the NYCHRL.

35. Upon information and belief during all times hereinafter mentioned, Travis Rehwaldt supervised the work of Plaintiff Ashlynn Alexander.

## FACTS

36. Ms. Alexander was employed by Showtime Pictures Development Company and Possible Productions, Inc. from October 2013 until September 2015 as a body double for the actor, Ruth Wilson, in the role of Alison on Showtime's "The Affair."

37. Travis Rehwaldt worked on "The Affair" as an Assistant Director.

38. On the set of "The Affair," Travis Rehwaldt directly supervised Ms. Alexander. He gave her and the rest of the cast instructions and controlled her work.

**Hostile Work Environment**

39. At the end of each filming day, all cast and crew members received a call sheet, which listed each person's role and a detailed schedule for the next day's work.

40. Travis Rehwaldt was responsible for creating the call sheets for each day of filming.

41. Travis Rehwaldt circulated these call sheets among all the cast and crew members on the set of "The Affair," including all writers, directors, and other coordinators.

42. Normally, Ms. Alexander's role was listed as "Alison Body Double."

43. On September 17, 2015, Ms. Alexander received a call sheet from Travis Rehwaldt.

44. In place of Ms. Alexander's role, Travis Rehwaldt had substituted her role with a description that read, "Alison Sexytime Double."

45. Ms. Alexander was humiliated. She takes her career seriously and knew that everyone working on "The Affair" read the call sheet and would see her reduced to a sexual object.

46. All of the other names listed on the call sheet had the correct role names.

47. Ms. Alexander was singled out and demeaned in front of everyone she worked with on set.

**Retaliation**

48. The day after receiving the call sheet where Ms. Alexander's role was labeled as "Alison Sexytime Double," she met with Travis Rehwaldt in his office to complain of sexual harassment.

49. Ms. Alexander informed Travis Rehwaldt that he had sexually harassed her and told him that she was humiliated in front of her coworkers because of his actions. She also expressed concerns she would not be paid properly for the day prior.

50. Travis Rehwaldt admitted that his language on the call sheet was inappropriate and then belittled Ms. Alexander, stating that she could be easily replaced.

51. Travis Rehwaldt's threats of retaliation scared Ms. Alexander.

52. Ms. Alexander did not complain any further because she was afraid that she would lose her job.

53. Six days later, on September 24, 2015, Ms. Alexander received notice that she was no longer needed on set for "The Affair."

54. When Ms. Alexander asked for an explanation for her termination, she was told that she did not have a good hair match with Wilson and "The Affair" was looking for someone else to fill her former role.

55. Ms. Alexander knew that this was untrue, since she had been wearing a wig for the duration of her work as Wilson's body double, without issue.

56. The actress hired to replace Ms. Alexander, Stephanie Corbett, also wears a wig in order to properly match Wilson's hair.

57. Ms. Alexander was terminated because she complained about Travis Rehwaldt's sexual harassment.

58. After being harassed and retaliated against, Ms. Alexander became lethargic, withdrawn and depressed.

59. It is difficult for Ms. Alexander to approach potential jobs with the same enthusiasm and ambition. Ms. Alexander is afraid of the next possible situation where she will be harassed and humiliated.

60. Ms. Alexander now suffers from a high level of anxiety which has negatively influenced the level of confidence that she has in her ability to perform her job.

61. This loss of confidence is particularly distressing because she has been pursuing this career since she was a child.

62. Ms. Alexander is much more selective about the jobs that she pursues because she is afraid of being humiliated again.

63. Ms. Alexander believes Defendants allowed her to be subjected to a hostile work environment because she is a woman.

64. Ms. Alexander believes that Defendants retaliated against her because she complained about the hostile work environment based on gender discrimination.

65. Because of Defendants unlawful discriminatory conduct, Ms. Alexander has suffered lost wages and emotional damages.

## FIRST CAUSE OF ACTION
## RETALIATION IN VIOLATION OF TITLE VII
*Against Possible Productions Inc. and Showtime Pictures Development Company*

66. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

67. By the actions described above, among others, Defendants have retaliated against Plaintiff by, inter alia, terminating her in violation of Title VII for complaining about sexual harassment.

68. As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE NYSHRL
### *Against all Defendants*

69. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

70. By the actions described above, among others, Defendants retaliated against Plaintiff in violation of the NYSHRL for complaining about sexual harassment.

71. By the actions described above, among others, Defendants have retaliated against Plaintiff by, inter alia, terminating her in violation of NYSHRL for complaining about sexual harassment.

72. Defendant Rehwaldt aided and abetted the retaliatory conduct.

73. As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
## DISCRIMINATION IN VIOLATION OF THE NYCHRL
### *Against all Defendants*

74. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs.

75. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of sex in violation of the NYCHRL.

76. Defendants treated Ms. Alexander less well than other employees on the basis of her sex.

77. Defendants, through their own conduct including that of their agents, managers, supervisors and employees, intentionally discriminated and retaliated against Ms. Alexander on account of her complaints regarding discrimination based on sex, in violation of the NYCHRL.

78. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

79. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF THE NYCHRL
*Against all Defendants*

80. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

81. By the actions described above, among others, Defendants retaliated against Plaintiff in violation of the of the NYCHRL.

82. Defendants and their agents and those under their supervision and control engaged in purposeful retaliation against Ms. Alexander's good faith complaints of discrimination, by firing her one week after she complained of sexual harassment.

83. The retaliatory acts of Defendants and their agents and those under their supervision and control were intentional and were performed with ill will and reckless indifference to Ms. Alexander's protected rights.

84. Defendants' retaliatory practices were concerted, abusive, extreme and outrageous.

85. Any alleged non-discriminatory reason is no more than pretext intended to divert attention away from Defendants' true intentions.

86. Defendants' aforementioned acts and omissions violated the NYCHRL.

87. Defendants, through their own conduct including that of their agents, managers, supervisors and employees, intentionally discriminated and retaliated against Ms. Alexander on account of her complaints regarding discrimination based on sex, in violation of the NYCHRL.

88. As a consequence of the actions and inactions of Defendants and their agents and those under their supervision and control, whereby Defendants and its agents have engaged in unlawful retaliatory practices based upon Ms. Alexander's complaint of discrimination, Ms. Alexander has been damaged emotionally; Plaintiff has developed anxiety, depression, emotional stress, and suffered embarrassment, humiliation, loss of self-esteem, lost past and future earnings, and other fringe benefits, and has otherwise been greatly injured.

89. Due to the acts complained of, Ms. Alexander is entitled to compensatory damages in an amount to be determined at trial, together with appropriate interest thereon; and an award of attorney's fees, expert fees, costs and disbursements.

90. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## **DEMAND FOR JURY TRIAL**

91. Plaintiff herein demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ashlynn Alexander demands that a judgment be entered in his favor and that the Court order and award Plaintiff the following relief against Defendants:

A.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.  An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C.  An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiffs emotional distress;

D.  An award of punitive damages in an amount to be determined at trial;

E.  Pre-judgment interest on all amounts due;

F.  An award of Plaintiff's reasonable attorneys' fees and costs; and

G.  Such other and further relief as the Court may deem just and proper.

Dated: Melville, New York
July 20, 2017

Respectfully submitted,

SHULMAN KESSLER LLP

By: _____
Troy L. Kessler
Tana Forrester
*Attorneys for Plaintiff*
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100